**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Elias W. Butkovich and Eva Butkovich, individually and d/b/a Artcraft Printers,

Plaintiffs,

v.

C. Paul Carver, Attorney; John D. Kelly, Attorney; Ford Motor Company; and Northwoods Ford-Lincoln-Mercury,

Defendants.

Civil No. 00-205 (DWF/JMM)

**MEMORANDUM OPINION AND ORDER**

---

Elias W. Butkovich and Eva Butkovich, 100 Central Avenue Northeast, Chisholm, MN 55719, appeared pro se.

C. Paul Carver, Esq., appeared pro se.

Robin C. Merritt, Esq., Hanft Fride O'Brien Harries Swelbar & Burns, 1000 First Bank Place, 130 West Superior Street, Duluth MN 55802-2094, appeared on behalf of Defendant John D. Kelly, Attorney.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on March 24, 2000, pursuant to Defendants' Motion to Dismiss. In the Complaint, Plaintiffs allege violations of their Sixth and Fourteenth Amendment rights, conspiracy, strict products liability, and negligence. For the reasons set forth below, Defendants' motion is granted.

## Background

Plaintiffs Eva and Elias Butkovich were plaintiffs in a Minnesota State Court action against Defendants Ford Motor Company and Northwoods Ford, Lincoln, Mercury. Defendants

APR 05 2000
FILED
FRANC... ...OSAL CLERK
JUDGMENT EN... APR 5 2000
DEPUTY CLERK

C. Paul Carver and John Kelly were attorneys representing Ford Motor Company and Northwoods Ford, Lincoln, Mercury in that action.

In 1964, Eva and Elias Butkovich were represented by an attorney named Leonard Kne in a suit against them filed in Detroit, Michigan. According to the Butkoviches, Mr. Kne "forgot" about a critical hearing–perhaps the trial–and a default judgment was entered against the Butkoviches. The result of that default judgment was that the Butkoviches lost their business and a family home. The Butkoviches assert that Mr. Kne misrepresented to them the status of his malpractice insurance and that a partner of Mr. Kne coerced the Butkoviches into settling any claims against Kne for $3,000. The Butkoviches never sought to have the default judgment vacated, probably because no attorney ever informed them of the possibility.

In December of 1993, the Butkoviches purchased a used Ford Grand Marquis equipped with a block heater. The evidence indicates that the previous owner of the Grand Marquis was the original owner, that the original owner never used the block heater, and that the original owner never tampered with or altered the block heater. Eight days after purchasing the Grand Marquis, the Butkoviches used the block heater for the first time. Whether from a malfunction of the block heater or from a short in the extension cord the Butkoviches used to plug in the heater, the use of the heater resulted in a fire which destroyed the Butkoviches' home and business, as well as the business of their grandson.

The Butkoviches attempted to obtain legal representation in a lawsuit filed against Ford Motor Company and Northwoods Ford, Lincoln, Mercury. Quite probably as a result of their past encounters with the bar, the Butkoviches experienced tremendous difficulty in obtaining and

keeping competent counsel.[1] At one point, when the Butkoviches were represented by Attorney Ron Simonson, the attorneys for all parties met and apparently discussed the possibility of stipulating that the cause of the fire was the extension cord. Shortly thereafter, the Butkoviches again became pro se and the Butkoviches themselves declined to sign any stipulation regarding the cause of the fire. Thus, there never was a valid stipulation that the extension cord caused the fire.[2]

Ultimately, the Butkoviches were faced with proceeding to trial pro se in Minnesota District Court in Hibbing Minnesota, in front of Judge Jeffrey Rantala. Not surprisingly, the Butkoviches were somewhat overwhelmed by the trial process. The record is somewhat confused with respect to exactly how far the trial progressed and how much testimonial evidence the Butkoviches presented. From the record, it appears that the Butkoviches were unaware of the need to introduce physical and documentary evidence through testifying witnesses; the record

---

[1] In a supplemental submission, the Butkoviches have informed the Court that, on several occasions during the interim between their experience with Mr. Kne and this action, they were required to represent themselves in legal action. At least some of those actions were before Judge Jeffrey Rantala and, on those occasions, the Butkoviches lost. In the supplemental submission, Mr. Butkovich stated that he apologized for not apprising the Court earlier of "all of the abuses [the] experienced before Judge Rantal[a]," but indicated that he was in a "state of shock when [the Court was] suggesting that [the Court was] considering ruling in Judge Rantala's behalf." The Court notes, however, that the present litigation does not concern these earlier court cases and that Judge Rantala is not a Defendant in this action. Whatever the Court decides, it will not be either in favor of or against Judge Rantala, because Judge Rantala is not a party to this lawsuit.

[2] To the extent that the Butkoviches claim some misconduct on the part of Mr. Carver or Mr. Kelly with respect to that stipulation, the Court notes that Messrs. Carver and Kelly owed a responsibility to their respective clients to achieve an outcome which was most beneficial to their clients. The Butkoviches are correct that the interests of justice are not always best served by the adversarial process which requires attorneys to pursue their own clients' interests ahead of a more general interest in "truth," Messrs. Carver and Kelly are not responsible for creating that adversarial system and were, in fact, ethically obligated to play by its rules.

indicates that the Butkoviches elicited testimony from most, if not all, of their scheduled witnesses, but they did not introduce any of the physical and documentary evidence they had prepared.[3]

At some point just prior to the close of the Butkoviches' case, Judge Rantala indicated that he wished to confer with each of the parties separately. First, Judge Rantala spoke to the Butkoviches. In chambers, Judge Rantala asked the Butkoviches how they felt the trial was proceeding; Mr. Butkovich responded "about even," apparently indicating that he felt their chances of prevailing were 50-50. Judge Rantala proceeded to tell the Butkoviches that he could not comment on how he thought the case was going, but he reminded them that if there was any hope of settling the matter without going to the jury, such a settlement would have to take place soon. He further informed the Butkoviches that, if they lost, they could be held responsible for the other side's costs of litigation, including expert witness fees which could run from $5,000 to $10,000 apiece. Apparently, this information scared the Butkoviches, especially Mrs. Butkovich, because after the fire they were not in a financial position to cover such costs. The Butkoviches expressed an interest in settling.

Judge Rantala then informed the Butkoviches that, if they were going to settle, they would have to agree to accept something significantly less than $500,000 (a figure which had

---

[3] One of the Butkoviches' grievances is that Judge Rantala and opposing counsel gave no consideration to the fact that the Butkoviches were pro se. Opposing counsel's obligations to their own clients would prevent them from assisting the Butkoviches with trial procedure. Moreover, although Judge Rantala is not a party to this litigation, the Court notes that the Minnesota Rules of Civil Procedure require a judge to hold pro se litigants to the same standard of performance and competence as licensed attorneys. While this rule may seem unfair or unreasonable, Judge Rantala was prohibited under existing law from assisting the Butkoviches in the presentation of their case or from "bending" the rules to accommodate their lack of legal expertise.

been suggested by one of the parties earlier in the litigation process). However, Judge Rantala informed the Butkoviches that he could not suggest a specific figure. The Butkoviches have apparently interpreted this exchange as an indication that Judge Rantala knew what the Defendants would be willing to offer but would not share that information with the Butkoviches. While the Court understands why the Butkoviches might be suspicious of anything to do with judges and lawyers, the transcript of that chambers discussion indicates that Judge Rantala was quite properly declining to speculate about what number the Butkoviches should suggest or what they should agree to. In short, it appears that Judge Rantala simply wished to avoid the appearance of representing the Butkoviches, a role which he was legally proscribed from taking on. Ultimately, though, even if Judge Rantala did have improper ex parte communications with the defendants in the state court action, it would not change the Court's analysis of this case.

Eventually, the Butkoviches agreed to settle their suit against Ford Motor Company and Northwoods Ford, Lincoln, Mercury for $5,000. About a month after entering the settlement, the Butkoviches signed a release.

The Butkoviches felt, however, that they had been coerced into entering the settlement and that the attorneys and the judge had conspired against them. Rather than moving the Hibbing court to vacate the settlement and/or appealing to the Minnesota Court of Appeals, the Butkoviches brought another action (alleging their original products liability claims as well as conspiracy) in the Minnesota State Court in Virginia, Minnesota. That action was dismissed. The Butkoviches then filed a third Minnesota State action in Duluth as well as this federal action.

The Butkoviches have brought this action alleging violation of their Sixth and Fourteenth Amendment rights, conspiracy, and various products liability torts. Defendants have moved for dismissal of the Complaint with prejudice.

## Discussion

### 1. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

### 2. Motion to Dismiss

The Court is aware that, over the past 35 years, the legal system as a whole has failed the Butkoviches. Based upon the papers contained in the record, the Butkoviches have had very little success obtaining effective assistance of counsel in pursuing their interests in court. The Court is deeply sympathetic to the losses the Butkoviches have sustained as a result of the file which precipitated this chain of events. Nevertheless, the facts articulated in the Complaint do not provide a basis for a cause of action which could be pursued in this Court.[4]

---

[4] The Defendants note several procedural defects in the Butkoviches' Complaint, most notably that the Complaint was served on the individual Defendants but not the corporate Defendants. The Butkoviches apparently thought that, since the individual Defendants had represented the corporate Defendants in earlier actions, service on the attorneys was equivalent to service on the clients. As a matter of law, this is not correct. However, for purposes of achieving some closure, the Court will overlook the procedural defects and rule on the merits of the motion

With respect to the Butkoviches' constitutional claims, specifically their rights to effective assistance of counsel and due process of law, there are a number of problems with these claims. First, constitutional claims can typically only be brought against government actors (such as the federal government, state governments, cities, police forces) or individuals acting "under color of state law," i.e., with the authority of one of these government actors. All of the Defendants to this action are private actors–private corporations and non-government attorneys–so constitutional claims against them would be inappropriate. Moreover, though, it is not at all clear that the Butkoviches' constitutional rights are implicated by the facts presented here.

Regarding the right to counsel, the Court is aware that civil litigation is a necessary recourse for individuals and that pursuing civil litigation without counsel is a daunting, even overwhelming, undertaking. However, the Constitution does not provide a right to an attorney in a civil action. That rule may seem unfair, but it is the law. As a result, the Butkoviches' claim for violation of their constitutional right to counsel must be dismissed. Similarly, the fact that the Butkoviches did not have an attorney does not mean they were deprived of due process of the law. Their ability to use that process to protect themselves was compromised because they did not have a lawyer, but the law simply does not guarantee them that much protection.

As to the products liability claims, the Butkoviches did enter into a settlement agreement. The Butkoviches assert that they were coerced into consenting to this agreement. Assuming that to be true, the Butkoviches' remedy was to move to vacate that judgment and/or to appeal that judgment through the state courts. The Butkoviches point out that they had no attorney to advise

---

to dismiss with respect to all four named Defendants.

them of these available procedures. Again, the Court notes that the Butkoviches were in an unfortunate and unenviable position. However, the law requires, rightly or wrongly, that unrepresented civil litigants in Minnesota state court be held to the same standard as attorneys. This rule may seem unfair, but it is the law.

In light of the settlement agreement and the release signed by the Butkoviches, the federal court cannot revisit the products liability issues or undo the settlement because of a legal doctrine called "collateral estoppel." In other words, because another court has spoken on these matters–through the settlement process–this Court cannot take a brand new look at the issues.

Finally, the Butkoviches have not alleged facts which would support a claim for conspiracy, even if such a tort were recognized in Minnesota. Again, our legal system is adversarial. While that may not be conducive to achieving the most just result in every case, the result of the adversarial system is that parties and their attorneys do not owe any special duties to other parties.

Again, the Court understands the Butkoviches' frustration, their desperation, in attempting to gain what they would consider justice. Unfortunately, the law provides no recourse for the Butkoviches in this Court. However the Court may feel about the cumulative effects of the events of the past 35 years, the Court notes that most of the instances of which the Butkoviches complain did *not* involve these individual Defendants in any way whatsoever. However sympathetic the Court may be to the plight of the Butkoviches, the law simply does not provide them with a remedy.

This case perhaps highlights the inaccessibility of the courts to a large segment of the population, the poor and the unrepresented. Such social significance is doubtless cold comfort to the Butkoviches, but it is the only comfort this Court can provide.

The Court is not unmindful of the fact that Mr. and Mrs. Butkovich will take strenuous exception to the Court's order. The Court would urge the Butkoviches to show this order to any individual or individuals that they trust and confide in, be they lawyer or nonlawyer, so that they might explore any additional remedies, including any appeal of this Court's order.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motions to Dismiss (Doc. Nos. 14 and 17) are **GRANTED** and the **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 5th, 2000

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

APR - 5 2000

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995